53 Spencer Realty, LLC v Fidelity Natl. Title Ins. Co. (2025 NY Slip Op 01336)

53 Spencer Realty, LLC v Fidelity Natl. Title Ins. Co.

2025 NY Slip Op 01336

Decided on March 12, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 12, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
CHERYL E. CHAMBERS
BARRY E. WARHIT
DONNA-MARIE E. GOLIA, JJ.

2021-03579
 (Index No. 520249/16)

[*1]53 Spencer Realty, LLC, respondent, 
v
Fidelity National Title Insurance Company, appellant, et al., defendants.

Riker Danzig Scherer Hyland & Perretti, LLP, New York, NY (Michael R. O'Donnell, Bethany A. Abele, and Jorge A. Sanchez of counsel), for appellant.
Jerome E. Goldman, Esq. P.C., Brooklyn, NY, for respondent.

DECISION & ORDER
In an action, inter alia, to recover damages for breach of contract, the defendant Fidelity National Title Insurance Company appeals from an order of the Supreme Court, Kings County (Debra Silber, J.), dated April 22, 2021. The order denied that defendant's motion for summary judgment dismissing the third cause of action and on its counterclaims.
ORDERED that the order is reversed, on the law, with costs, and the motion of the defendant Fidelity National Title Insurance Company for summary judgment dismissing the third cause of action and on its counterclaims is granted.
By deed dated March 20, 2006, Congregation B'nei Meir Moshe (hereinafter the Congregation) conveyed certain real property on Spencer Street in Brooklyn to the plaintiff. In connection to this conveyance, a note in the sum of $862,500 was executed on the plaintiff's behalf in favor of Washington Mutual Bank (hereinafter WAMU), and the note was secured by a mortgage on the property. In connection with the plaintiff's purchase of the property, Fidelity National Title Insurance Company (hereinafter Fidelity) issued a policy of title insurance (hereinafter the policy) to the plaintiff.
To satisfy Fidelity's prerequisites to receive the policy, the plaintiff was required to offer proof of the plaintiff's due formation, proof that "there has been no change in the make-up or composition of the organization," and proof that "the party or parties executing instruments on behalf of the organization have authority to act." To satisfy these requirements, documents were submitted reflecting that the sole member of the plaintiff was Rivkah Kellner and that Kellner was authorized to act on behalf of the plaintiff and had approved the plaintiff's purchase of the property and execution of the mortgage on the property. However, at all relevant times, the sole owner of the plaintiff was Gitta Brull. Kellner, Brull's daughter, had power of attorney for Brull, and Kellner's powers included access to Brull's personal bank account. Otherwise, Kellner had no official affiliation with the plaintiff.
In November 2008, the plaintiff defaulted on the mortgage. Thereafter, JP Morgan Chase Bank, National Association (hereinafter Chase), WAMU's successor in interest, commenced [*2]an action to foreclose the mortgage against, among others, the plaintiff (hereinafter the foreclosure action). On May 20, 2010, Chase assigned the mortgage and note to 53 Spencer Holdings, LLC (hereinafter Spencer Holdings). On August 15, 2010, during the pendency of the foreclosure action, a deed was executed on behalf of the plaintiff conveying the property to Island Properties NYC, LLC (hereinafter Island Properties). Spencer Holdings ultimately obtained a judgment of foreclosure and sale, a foreclosure sale was held, and the property was conveyed to Spencer Holdings by a referee's deed dated June 5, 2013, and recorded on July 12, 2013.
In August 2013, the Congregation commenced an action, inter alia, to quiet title to the property, alleging that the 2006 sale of the property was never approved by a court order or by the Congregation and that the documents demonstrating otherwise were invalid (hereinafter the quiet title action). Amidst the quiet title action, in September 2013, the plaintiff sent a written title insurance claim to Fidelity concerning the property. In October 2013, Fidelity denied the claim and tender of defense, determining that the plaintiff no longer held an insurable interest in the property.
In March 2016, the Congregation and Spencer Holdings executed a stipulation of settlement in the quiet title action, which was so-ordered by the Supreme Court on March 11, 2016. The so-ordered stipulation provided, among other things, that title to the property would revert back to the Congregation in exchange for the Congregation's payment of the sum of $1,400,000 to Spencer Holdings. In a separate order dated March 11, 2016, the court, inter alia, directed that certain documents "are hereby determined to be a nullity and are not to be given any force or effect," including (1) the 2006 deed conveying the property from the Congregation to the plaintiff, (2) the plaintiff's mortgage, (3) Chase's assignment of the plaintiff's mortgage to Spencer Holdings, (4) the 2010 deed conveying the property to Island Properties, and (5) the 2013 referee's deed conveying the property to Spencer Holdings. The court further directed that, simultaneous with the reversion of the property to the Congregation, the Congregation was permitted to transfer title to the property to Spencer Fifty Three, LLC (hereinafter Fifty Three). In a deed dated March 14, 2016, the Congregation conveyed the property to Fifty Three.
In November 2016, the plaintiff commenced this action against Fidelity, among others. The third cause of action sought to recover damages for breach of contract against Fidelity, alleging that Fidelity breached the policy. Fidelity's amended answer asserted various affirmative defenses and two counterclaims, alleging fraud in the inducement and seeking rescission of the policy. Fidelity alleged, among other things, that the plaintiff and Kellner made materially false representations about Kellner's ownership interest in the plaintiff and her authority to act on its behalf, and that Fidelity would not have issued the policy if it had known such statements were false.
Fidelity moved for summary judgment dismissing the third cause of action and on its counterclaims. In an order dated April 22, 2021, the Supreme Court denied the motion. Fidelity appeals.
"A defendant moving for summary judgment has the burden of making a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (Tejada v Gassaway, 228 AD3d 794, 795). "To defeat summary judgment, the nonmoving party need only rebut the prima facie showing made by the moving party so as to demonstrate the existence of a triable issue of fact" (Gluck v Mapfre Ins. Co. of N.Y., 221 AD3d 662, 663 [internal quotation marks omitted]; see Schultheis v Arcate, 216 AD3d 1018, 1019).
"[A] policy of title insurance is a contract by which the title insurer agrees to indemnify its insured for loss occasioned by a defect in title" (A. Gugliotta Dev., Inc. v First Am. Tit. Ins. Co. of N.Y., 112 AD3d 559, 560 [internal quotation marks omitted]; see Pierot v Chicago Tit. Ins. Co., 202 AD3d 1010, 1011). "The kind of loss contemplated by such a policy is that loss or damage sustained when, because of a defect in the title, the insured was bound to pay something to make it good" (Renaissance Venture Capital Corp. v Fidelity Natl. Tit. Ins. Co., 128 AD3d 790, 790 [internal quotation marks omitted]). "The liability of the title insurer is based on the contract, and the rights of the parties are limited to its terms" (id.).
Here, paragraph 2 of the conditions and stipulations of the policy states, inter alia, that "[t]he coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land." In support of its motion, Fidelity demonstrated, prima facie, that the plaintiff did not retain an interest in the property at the time of its claim. The judgment of foreclosure and sale entered in the foreclosure action directed, among other things, that the plaintiff was "forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption" in the property. Following the issuance of this judgment of foreclosure and sale, the plaintiff did not have title to convey the property and therefore did not have an insurable interest in the property (see Green Point Sav. Bank v Barbagallo, 247 AD2d 442, 443). In opposition, the plaintiff failed to raise a triable issue of fact. Contrary to the plaintiff's contention, the subsequent so-ordered stipulation and order issued in the quiet title action did not restore the plaintiff's interest in the property (see Nong Yaw Trakansook v 39 Wood Realty Corp., 18 AD3d 633, 634; Roosevelt Hardware v Green, 72 AD2d 261, 264).
Accordingly, since Fidelity demonstrated as a matter of law that the plaintiff's claim was not covered under the terms of the policy, the Supreme Court should have granted that branch of Fidelity's motion which was for summary judgment dismissing the third cause of action.
Moreover, Fidelity demonstrated its entitlement to summary judgment on its counterclaims alleging fraud in the inducement and seeking rescission of the policy.
To recover damages for fraudulent inducement, a plaintiff must prove "(1) a misrepresentation or an omission of material fact which was false and known to be false by the defendant, (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it, (3) justifiable reliance of the plaintiff on the misrepresentation or material omission, and (4) injury" (CANBE Props., LLC v Curatola, 227 AD3d 654, 656 [internal quotation marks omitted]; see Israel v Progressive Cas. Ins. Co., 222 AD3d 733, 734).
"[T]o establish its right to rescind an insurance policy, an insurer must demonstrate that the insured made a material misrepresentation. A misrepresentation is material if the insurer would not have issued the policy had it known the facts misrepresented" (Friedman v Otsego Mut. Fire Ins. Co., 179 AD3d 1023, 1024-1025 [internal quotation marks omitted]; see Nabatov v Union Mut. Fire Ins. Co., 203 AD3d 1052, 1054).
Here, the plaintiff does not dispute Fidelity's contentions that misrepresentations were made in the plaintiff's insurance application and that such misrepresentations were material. The plaintiff contends only that the misrepresentations were made by Kellner and cannot be attributed to the plaintiff. However, an "agent's fraud can be imputed to the corporation, and a corporation will be deemed to have ratified the agent's acts," where "it retains the benefit of those acts for corporate purposes" (Zanoni v 855 Holding CO., 96 AD2d 860, 861, affd 62 NY2d 963). Indeed, "one cannot retain the product of the misrepresentations and at the same time repudiate the agency and methods which brought it into being" (La Belle Hgts., Inc. v Stone, 227 App Div 65, 66; see Green v des Garets, 210 NY 79, 81). Here, the plaintiff can be deemed to have ratified Kellner's actions by accepting title to the property that Kellner purportedly purchased on its behalf and thereafter submitting a claim under the policy that Kellner procured (see Zanoni v 855 Holding Co., 96 AD2d at 861).
Accordingly, the Supreme Court should have granted that branch of Fidelity's motion which was for summary judgment on its counterclaims.
The parties' remaining contentions either are without merit or need not be reached in light of our determination.
IANNACCI, J.P., CHAMBERS, WARHIT and GOLIA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court